[Civil No. 1596.   Filed June 15, 1918.]

[173 Pac. 417.]

In the Matter of the Estate of YGNACIA B. DE BRAZIL, Deceased, ANDRES OCHOA and ROBERT E. MORRISON, Executor, Appellants, v. MANUEL CASTILLO, CARLOTA CASTILLO and JOSE CASTILLO, Appellees.

1. WILLS—TESTAMENTARY CAPACITY—FORMER MENTAL CONDITION.—Any previous disturbed mental condition shown to have existed some four days earlier than the execution of testatrix's will is not evidence contradicting the testimony bearing on her condition at the time of execution and publication, though a circumstance, when supported by others, properly admitted as evidence, but, standing alone, insufficient to justify an inference that the former mental condition continued when positive testimony in abundance is to the contrary.

[As to testamentary capacity and insane delusions, see note in 8 Am. Rep. 184.]

2. WILLS—INCAPACITY—SUFFICIENCY OF EVIDENCE.—In a will contest, evidence held insufficient to show that testatrix was mentally incapacitated to make her will when it was executed.

APPEAL from a judgment of the Superior Court of the county of Yavapai.· Frank O. Smith, Judge. Judgment vacated and cause remanded with directions.

STATEMENT OF FACTS BY THE COURT.

On the twenty-eighth day of January, 1916, the superior court of Yavapai county, exercising its probate jurisdiction, ordered probated a document bearing date of December 30, 1915, as the last will and testament of Ygnacia de Brazil, deceased.   The said will so admitted to probate designated Andres Ochoa as the sole devisee of the testatrix, and nom-

inated and appointed Robert E. Morrison as the executor of such will, directing that such executor act without bonds.

On October 17, 1916, Carlota, Manuel, and Jose Castillo commenced this action as heirs at law of said decedent, to contest said will, and to set aside the order probating the same. The grounds for contest set forth in the complaint are:

First, "That the said Ygnacia de Brazil was not, at the date of said writing, of sound mind and memory, but by reason of extreme age, worry, and protracted severe sickness was in a dying condition and mentally incapacitated from making a will or a proper distribution of her property."

The second grounds of contest asserted are that the decedent was coerced into executing the instrument as her last will and testament by the "undue influence, importunities, physical direction, and pretenses of the said Ochoa and Morrison." This is alleged to have occurred "in decedent's death chamber four or five hours before" her death. The cause was tried before the court with a jury. The jury answered the following interrogations in the negative:

(1) "Was Ygnacia de Brazil competent to make a last will and testament on December 30, 1915?" (2) "Did Ygnacia de Brazil make, execute, and publish the instrument offered herein as her last will and testament of her own free will, free from menace, duress, fraud, or any active undue influence?"

The court denied defendants' motion for judgment notwithstanding the verdict, and rendered findings of fact upon the first question submitted to the jury as follows:

"The court finds from the evidence herein and the verdict of the jury on the special issue submitted to them that Ygnacia de Brazil on the thirtieth day of December, 1915, was not competent to make a last will and testament. The court finds that at the time of making the said alleged will Ygnacia B. de Brazil was not possessed of sufficient mind and memory to make and execute a last will and testament."

The judgment follows vacating the order admitting the will to probate and decreeing the instrument invalid as a will of the deceased. From such judgment the defendants appeal.

Mr. J. E. Russell and Mr. Robert E. Morrison, for Appellants.

Mr. Robert S. Fisher, for Appellees.

CUNNINGHAM, J. (After Stating the Facts as Above).—
The appellants assign as error the insufficiency of the evidence
to support the verdict and the failure of the evidence to
sustain the judgment. The court has clearly based the judg-
ment on the count of the complaint asserting testamentary
incapacity as the grounds for contest. Such is manifestly
the effect of the court's findings of fact. The second ground
for contest, undue influence, is wholly unsupported by the
evidence, and the trial court so treats the matter by failing
to mention any fact as established tending to prove undue in-
fluence exerted at the time the instrument was signed in the
"death chamber" as alleged in the complaint. The appel-
lants then have no grounds for complaint with regard to the
second alleged cause for contest; the issues based thereon
having been in effect determined in favor of the appellants
and rightly so.

The circumstances under which the will was prepared,
signed and declared are established by the uncontroverted
testimony of the persons present at the time. On the thir-
tieth day of December, 1915, the testatrix was seriously ill,
and had been seriously ill for eight days. About noon on said
thirtieth day of December, Dr. Looney, her regular physician,
visited her professionally, and he states that testatrix was
then mentally sound.

Marie Sedillos was at the Brazil house all the day of De-
cember 30th. Dr. Looney came and left. After the doctor
left Mrs. Brazil requested Marie Sedillos to find Teresa Mar-
tinez and have her send for the priest and for Mr. Morrison,
Mrs. Brazil's lawyer. Marie did as she was requested, and
Teresa sent her little boy for the priest and lawyer. About
4 o'clock in the afternoon Mr. Morrison arrived at the Brazil
home accompanied by Mr. Allen Hill, an office assistant to
Mr. Morrison. A few minutes later the priest arrived. When
Mr. Morrison and Mr. Hill arrived Ochoa attended them at
the door. Mrs. Brazil was in bed. Mrs. Martinez was in
the room. Mr. Morrison and Mr. Hill greeted Mrs. Brazil
and inquired of her wish. She told Mr. Morrison that it was
her desire to "make a paper giving to Andres Ochoa all my
property." Mrs. Martinez was requested by Mr. Morrison to,
and she did, inquire in the Spanish language of Mrs. Brazil
her desire for the presence of Mr. Morrison. Mrs. Martinez
said that "Mrs. Brazil wants you to make out her will or a

paper that after all of her debts are paid that all of her property shall go to Andres Ochoa.'' The will was written by Mr. Hill in an adjoining room. The priest came while the will was being prepared. The priest was alone with the deceased in the sick room while performing religious ceremonies. When these were performed, Mr. Morrison and Mr. Hill returned to the sick room, and Mr. Hill read the will in English, and the priest translated it to the Spanish language. When finished, Mrs. Brazil stated that the paper read in her hearing was her will. At her request Mr. Hill pointed out the proper place for her signature and wrote her name, she making her mark. Thereupon Mr. Hill and Jose Sedillos executed the will as witnesses. At the time the will was read in the hearing of the deceased and at the time she executed the will, Mr. Morrison, Mr. Hill, the priest, Father Eustace, Jose Sedillos, Marie Sedillos, Teresa Martinez and Andres Ochoa were in the room giving solemn attention to the proceedings. Each of these parties have testified to the clear mind of the deceased during the execution of the will. From all of the testimony bearing upon the mental condition of the testatrix from the time Dr. Looney visited her at about noon until the will was completely executed and published by her as her will, and thereafter until 10 P. M., when she died, but one conclusion can be drawn; that is, that the testatrix was at the time of making said will of a sound and disposing mind and memory. Any previous disturbed mental condition shown to have existed some four days earlier as testified by Louisa Rosas is not evidence contradicting the testimony bearing upon the mental condition of the testatrix at the time of the execution and publication of the will. Such former mental condition is a circumstance which, when supported by other circumstances, may properly be admitted as evidence, but, standing alone, is insufficient to justify an inference that such mental condition continued until the time of making the will, when positive testimony in abundance is to the contrary. As opposed to the direct positive testimony of a large number of witnesses, better situated to observe and know the mental condition of the testatrix at the period of time vital to the act, we find testimony of other witnesses tending to establish the mental condition of the testatrix at particular dates ranging from four days prior to the date upon which the will was executed to ten months prior to that date. Assuming

that all of the witnesses testified truthfully of the facts related, and of their respective opinions of the unsound mental condition of the testatrix at the times specified, yet the uncontradicted testimony of the sound state of testatrix's mind at the time she made and published her will is the testimony controlling the issue here joined and on trial.

I find no substantial evidence in the record showing or tending to show that the testatrix was mentally incapacitated to make the will in question on the thirtieth day of December, 1915. The judgment is not sustained by the evidence, and is therefore contrary to law.

The judgment is vacated, and the cause remanded, with instructions to grant a new trial.

FRANKLIN, C. J., and ROSS, J., concur.