210 P.2d 331

## CHESTER v. CHESTER.

No. 5060.

Supreme Court of Arizona.

Oct. 3, 1949.

Morgan & Locklear, of Prescott, attorneys for appellant.

Crawford & Baker, of Prescott, attorneys for appellee.

PHELPS, Justice.

The plaintiff, H. Ray Chester (hereinafter called appellee), instituted an action against defendant, Edna G. Chester (hereinafter called appellant), for divorce in Yavapai County, Arizona, in 1946, alleging excesses, cruel treatment and outrages against appellee as grounds for divorce. The action was filed September 14, 1946, at which time the appellant was residing in Fort Wayne, Indiana, but in due time she filed an answer and the cause was tried to the court without a jury, both parties being present and represented by counsel.

In her answer the appellant raised the question of jurisdiction of the court to try the case upon the ground that appellee was not a bona fide resident of the state of Arizona at the time the action was insti-

tuted, and denied generally and specifically each and all the other allegations of the complaint. The trial court rendered judgment in favor of the appellee.

The facts are that appellant and appellee were married in Fort Wayne, Indiana, on March 29, 1942. At the time, appellee was a practicing physician at Fort Wayne and appellant was a school teacher. Appellee has suffered from asthma all his life and due to overwork during the war, developed a highly nervous condition. In 1944 he suffered a heart attack known as angina pectoris, from all of which afflictions he has since suffered.

It appears from the evidence that differences arose between appellant and appellee soon after their marriage frequently resulting in quarrelling and on several occasions resulted in appellee striking appellant.

When appellee suffered his heart attack in the early part of 1944 he was confined to a hospital for a period of five weeks and soon after his return home from the hospital he began to act strangely and on different occasions insisted upon a separation. His asthma and heart trouble seemed to grow worse and in March, 1945, he came to Arizona for his health where he appeared to somewhat improve. He made frequent trips back to Indiana during the ensuing year and a half and in April 1946 appellant and appellee reconciled their differences and lived together for a short time in Cottonwood, Arizona, after having spent a second honeymoon in Chicago. This, however, was of brief duration and in September this action was filed as hereinabove stated.

According to the evidence the acts of excesses, cruelty and outrages relied upon by appellee are:

1. That they were always quarrelling.

2. That she would not let him into her room in November, 1944, to answer the telephone and that she thereafter called the police to their home; that the following day she filed an action against him in Indiana for a three-year limited separation and enjoined him from disposing of their property during that period.

3. That she stated in the presence of a banker in Fort Wayne in 1946 that she would not sign a mortgage on property which stood in both their names, until she talked with her attorney.

4. That in 1944 she had informed his mother who was elderly and ill at the time that appellant and appellee were unable to get along together. He claims that these things humiliated him.

From the judgment of the trial court in favor of appellee appellant appeals to this court and presents six separate assignments of error. They resolve themselves however into three questions. (1) Did the court have jurisdiction to try the cause? (2) Was there competent evidence, reasonably sufficient to sustain the allegations of the complaint relating to excesses,

cruelty and outrages? and (3) Did the court have the power to require appellant to testify on cross-examination for the purpose of corroborating appellee's charge of cruelty?

As to whether or not the court had jurisdiction to try the case of course depends upon whether the appellee was a bona fide resident of the state of Arizona and the county of Yavapai at the time the action was brought. We will consider this question first. Domicile of plaintiff-appellee in Yavapai County, Arizona, was an indispensable prerequisite to jurisdiction of the trial court in the divorce proceeding. Section 27-803, A.C.A.1939; second Williams case (Williams v. North Carolina), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366, 1367.

Under our statute, supra, actual bona fide residence in the State for one year and residence in the county for six months is the time prescribed by the legislature for establishing domicile. The bona fides of residence is established by the joint operation of act and intent. It is the rule that intent must be an intention to permanently reside in the adopted state and must be clearly proved. Andrade v. Andrade, 14 Ariz. 379, 128 P. 813. Appellee testified that he intended at all times after arriving in Arizona to make this his home because he felt an improvement in his health here. His conduct and his correspondence, however, seem to contradict such an intention. A Mrs. Calkins testified that he had lived in the Verde Valley ever since his arrival in 1945 when she first met him except when he was away on trips. This tended to slightly corroborate his testimony as to his domicile in Arizona. The court found upon a conflict of evidence that he was a bona fide resident of the state when he filed this action and it is our invariable rule that where there is a conflict in the evidence we will not disturb the findings of the trial court if there is any reasonable evidence in the record to sustain it. Be it understood, however, that we consider the testimony of Mrs. Calkins to the effect that she believed the appellee to be reputable and his statements reliable to have no probative value for any purpose whatever and that such testimony was wholly inadmissible under any rule of evidence with which we are familiar and had objection been made thereto the court would have necessarily sustained it.

We are of the opinion that the evidence relating to excesses, cruelty and outrages alleged to have been perpetrated against appellee by appellant is not supported by any competent evidence whatever and the finding of the trial court to the contrary cannot be sustained. In order to determine whether the acts of appellant relied upon by appellee as constituting such excesses, cruelty and outrages toward appellee as are contemplated by subsection 5 of section 27-802, A.C.A. 1939, as grounds for divorce, it will be

necessary to consider the surrounding circumstances at the time such acts occurred to get a true perspective of the actual relations existing between the parties.

■ The first ground relied upon is that they were always quarrelling. There is no evidence that any of said quarrels were precipitated because of anything appellant may have said or done. And unless we are able to fix the blame upon her for said quarrelling, the charge that they quarrelled all the time furnishes no ground for divorce. The appellee was a sick man. He admitted upon the witness stand that he didn't see how anybody could get along with him under the circumstances. The evidence further showed that he slapped her upon the slightest provocation or no provocation at all. Unquestionably his afflictions constituted a heavy cross for him to bear and appellant should have been forgiving and forbearing in her attitude toward him under such conditions. There is nothing in the evidence, however, to indicate that what was said by her at any time was calculated to injure his feelings during the course of these quarrels. Considering the state of his health it was natural that he would exaggerate in his own mind anything that may have been said by her, if she did say anything, that tended to injure his feelings.

On the occasion when she refused to let him into her room to answer the phone, he had for some time been living separate from her, voluntarily leaving their bedroom where an extension of the telephone was located, and occupying another bedroom on the same floor of the home. He had on various occasions previous to that time slapped her and at least on two occasions had insisted on a separation; had lived away from the home for considerable periods of time and had cut her off from a drawing account forcing her to obtain employment to earn her own livelihood. He had been particularly ugly in his attitude immediately prior to this occurrence. It had been his custom on previous occasions when called, to answer the phone down stairs. His conduct in pounding upon the door and stating that she would "either open the door or else" was sufficient to arouse in her a fear for her safety, and she was not only justified in declining to admit him to her room under the circumstances but was justified in calling the police to aid in her protection, as she did do.

She was likewise justified in bringing an action in the courts of that jurisdiction for a limited separation, and to protect whatever interest she had in their property by procuring an order of the court enjoining the disposition of any portion thereof during the period of separation.

He claims that her disclosure to his mother that their domestic relations were not happy caused him humiliation and was injurious to the health of his mother. Under all the evidence in the case there is nothing to justify such a charge. Under the undisputed evidence the relations be-

tween appellant and the mother of appellee were at all times friendly and as appellant said, "there was a lengthy and very happy relationship between her and me."

The fact that appellant declined to sign a mortgage against property, the title of which stood in both their names, until she could confer with her attorney was a most natural and common-sense thing for appellant to do. It was the exercise of a legal right. At the time this occurred they were, and had been for some time, living separate and apart. She was earning her own living. She had paid the installments and the taxes due on a portion of the property for some period of time. She had an interest in said property. She did not definitely refuse to sign the mortgage in question but only stated that she desired to consult her attorney before she did so. Upon their reconciliation in the spring of 1946 she voluntarily dismissed her action for limited separation and had the Indiana court dissolve the injunction restraining appellee from disposing of his property.

■ Considering all of the acts singly or together even if appellee himself was in nowise to blame, such acts could not constitute excesses, cruelty and outrages as contemplated under our statute as a ground for divorce. When we consider, however, the shortcomings of the appellee; of his repeated assaults upon the person of the appellant, upon slight or no provocation at all; his having left her home declining to furnish her with the necessaries of life thus compelling her to obtain employment; and when we consider the things that he did apparently to aggravate her, such as destroying their wedding picture, and removing bedding from her room when there was an ample supply in his own room for his comfort, under no circumstances can it be said from the evidence that she was guilty of unjustifiable conduct toward him, and unless the conduct of a spouse is unjustifiable even though it does result in mental suffering of the other spouse such conduct does not furnish grounds for divorce. Smith v. Smith, 61 Ariz. 373, 149 P.2d 683.

■ There is a further very pertinent reason why a divorce should not be granted in this case and that is from all the evidence assuming that the appellant did everything that appellee testified she did, and assuming that she did it unjustifiably, yet the conduct of the appellee as disclosed by the undisputed evidence would bar him from the right to a divorce in this case under the rule laid down in Brown v. Brown, 38 Ariz. 459, 300 P. 1007, wherein the court said that it was undoubtedly the law that no decree should be granted where the evidence shows recrimination. The evidence in the instant case is of such a character that had appellant filed a cross-complaint and asked for a divorce the court would have been compelled to grant it.

■ In view of the conclusion here reached we deem it unnecessary to discuss

110

the other assignment of error other than to say that we believe section 27-804, A.C.A. 1939, providing that "In an action for divorce the defendant shall not be compelled to answer upon oath, nor shall the complaint be taken as confessed for want of an answer * * *," has reference to the pleadings rather than to the testimony of the defendant and we do not feel called upon to discuss the rule laid down in Lundy v. Lundy, 23 Ariz. 213, 202 P. 809, and Stark v. Stark, 32 Ariz. 392, 259 P. 401.

For the reasons above stated it is ordered that the judgment of the trial court be reversed and cause remanded with direction to dismiss the complaint.

LA PRADE, C. J., and UDALL, STANFORD, and DE CONCINI, JJ., concurring.