506 P.2d 256

In the Matter of the ESTATE of Rosalie Eva VERMEERSCH, Deceased.

The VALLEY NATIONAL BANK OF ARIZONA, as Special Administrator of the Estate of Jules L. Vermeersch, Appellant,

v.

Rosalie M. LEWIN, Appellee.

No. 10745.

Supreme Court of Arizona, In Division.

Feb. 15, 1973.

Rehearing Denied March 13, 1973.

R. G. Langmade and Moore, Romley, Robbins & Green, by Elias M. Romley and Hiram A. Cannon, Phoenix, for appellants.

Cunningham, Goodson & Tiffany, Ltd., by John F. Goodson and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by James H. O'Connor and Harry J. Cavanagh, Phoenix, for appellee.

HAYS, Chief Justice.

This is an appeal from a jury verdict in favor of the contestant of the probate of

the will of Rosalie Eva Vermeersch. Her husband, Jules L. Vermeersch, as the executor named in the will, filed the original petition for probate on June 30, 1969. Rosalie Marie Lewin, the adopted daughter of Mr. and Mrs. Vermeersch, contested the validity of the will on the grounds of testamentary incapacity and undue influence. Mr. Vermeersch later declined to act as executor, for medical reasons, and the alternative executor named in the will, The Valley National Bank of Arizona, was appointed as executor. The proponent (appellant) on appeal is The Valley National Bank of Arizona, as the alternate Executor-Designee and as the Guardian of the Estate of Jules L. Vermeersch, an incompetent. The contestant (appellee) is Rosalie M. Lewin, the adopted daughter.

The questions presented on appeal are substantially as follows:

(1) Was the evidence below sufficient to support the court's finding Mrs. Vermeersch lacked testamentary capacity and was acting under undue influence when she executed her will;

(2) Was it error to admit evidence concerning the will, the testamentary capacity and the susceptibility to undue influence of Mr. Vermeersch;

(3) Was it error to allow the trial court to cross-examine Kathryn Jackson and Jewel Dillehay; and

(4) Was it error to refuse to give proponent's requested instructions.

The facts which were brought out during some five and one-half weeks of trial are somewhat involved and show a unique family situation. Mr. and Mrs. Vermeersch moved to Arizona in 1923 from New Orleans and joined Mr. Vermeersch's parents in Phoenix. That same year they adopted Rosalie who had been born as a result of an affair between Mr. Vermeersch and a family friend in Louisiana. In Phoenix, Mr. Vermeersch began his machinery business which grew into a community estate worth approximately one million dollars. Kathryn Jackson, the secretary, was employed in 1923 and was con-

tinuously employed by Mr. Vermeersch until he was adjudged incompetent after the completion of the trial.

Kathryn's role during this time went beyond that of a secretary. She sold repair parts, maintained the inventory and sold equipment. The business was on the south side of East Van Buren Street in Phoenix and the family homes were directly across the street on the north. It was a family business and, although Kathryn lived separately with her sister, Jewel Dillehay, Kathryn was part of the family. Some testimony indicates that Kathryn and Mr. Vermeersch took trips together and slept together. Some testimony indicates that Kathryn was bossy and that Mrs. Vermeersch was jealous of her. Other testimony shows Kathryn as a loyal friend and employee of the entire family. Kathryn kept the books and as time went on assumed more and more duties in running the house. She hired and fired housekeepers and did the shopping for the house, as well as for Mrs. Vermeersch's clothes. In later years, she prepared the family income tax statements.

Mrs. Vermeersch was 12 years older than Mr. Vermeersch and the evidence indicates he loved her in a protective way. She was devoted to him. Mr. Vermeersch's parents lived in a house immediately to the west of Jules and Rosa Vermeersch. When his parents died, Mr. Vermeersch moved into the west house and, though he visited her daily, he never again lived in the east house with his wife.

Although there were a number of family quarrels, Mrs. Vermeersch appears to have accepted Rosalie and loved her as her own daughter. The Vermeersches were an old-country Catholic family and Rosalie was not allowed to dress and date like her high school contemporaries. In 1940 she rebelled and married Alfred Allison against her family's wishes. The marriage was not a happy one, but she stayed married to Mr. Allison until 1954 for the sake of her parents and grandparents. In 1960 Rosalie married Burt Lewin and was di-

voxced from him in 1969. Although Rosalie's relationship with her father was stormy at times, he was extremely fond of her, talked about her constantly, and visited her frequently, especially during her marriage to Burt Lewin. Rosalie did not see her mother as frequently, although Mrs. Vermeersch had family dinners with the Lewins on holidays.

In November 1967, Jules Vermeersch was involved in an automobile accident. The hotly-disputed events, crucial to this appeal, date from this point. Mr. Vermeersch was seriously ill after the accident and Rosalie wanted her father to come to her house to recuperate when he was well enough to leave the hospital. Mr. Vermeersch thought his daughter was trying to get his money and was afraid she was going to try to kidnap him. He was discharged at his wife's request on December 17, 1967, and taken, accompanied by several deputy sheriffs, to his own home. Guards were hired so that Rosalie and her attorney could not get into the house. Kathryn, the secretary, was taking care of Mr. and Mrs. Vermeersch and is alleged to have manipulated them into believing that Rosalie was only after their money. Kathryn was in charge and only those people she allowed were permitted to see the Vermeersches.

On December 19, 1967, Rosalie filed a petition to have her father declared incompetent and to have a guardian appointed for his estate. A restraining order was issued to prevent Mr. Vermeersch from having access to his bank accounts and other assets. He was bitter about his daughter's attempt to have him declared incompetent. The matter of Mr. Vermeersch's competency and ability to handle his affairs was tried and he was found competent and capable of taking care of himself and managing his property without assistance. He was found not likely to be deceived or imposed upon by artful or designing persons.

On the night of January 9, 1968, when Mr. Vermeersch was again in the hospital, the contestant, her husband, two security guards, a private detective, and the contestant's daughter cut through the fence around the Vermeersch house and tried to get in to see Mrs. Vermeersch. Mrs. Vermeersch came to the door but was afraid that Rosalie was trying to kidnap her and told them to go away.

While Mr. Vermeersch was still in the hospital in January, 1968, he called his attorney and told him that his wife wished to change her will. It is her new will, executed on January 23, 1968, which is the subject of this lawsuit.

■ An examination of the events surrounding the actual making of the will is necessary to determine if the evidence below was sufficient to support the court's finding that Mrs. Vermeersch lacked testamentary capacity and was acting under undue influence when she executed her will. Policy favors testacy and it is the duty of the court to carefully examine a verdict finding a will invalid and to set aside such a verdict where it appears the evidence is not clearly sufficient to support it.

"In will contests the evidence must be closely scrutinized by appellate courts because '. . . in will contests more than in any other class of cases are juries wont to render verdicts upon insufficient evidence . . .'" In re Walters' Estate, 77 Ariz. 122 at 129, 267 P.2d 896 at 901 (1954).

■ Mrs. Vermeersch was 94 years old at the time she executed her will. She had very poor eyesight and was deaf in one ear and partially deaf in the other. As a result of previously broken hips, she used a "walker" to move around. Evidence shows that she was forgetful and did not remember the names of her great grandchildren. She spilled food when she ate and went to the bathroom frequently. She had a short attention span and it was difficult for some people to talk with her. This court, however, is not concerned with a generally deteriorated mental condition; the law is concerned only with the state of the testatrix's mind at the time of the execution of the will. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963). As the Supreme

Court stated when it reversed a jury verdict in favor of the contestant in Estate of DeBrazil, 19 Ariz. 567, 173 P. 417 (1918):

"Assuming that all of the witnesses testified truthfully of the facts related, and of their respective opinions of the unsound mental condition of the testatrix at the times specified, [prior to the execution of the will] *yet the uncontradicted testimony of the sound state of testatrix's mind at the time she made and published her will is the testimony controlling the issue here joined and on trial.*" 19 Ariz. at 570–571, 173 P. at 419 (emphasis added).

The evidence shows that Mr. Vermeersch first informed the attorney preparing the will that Mrs. Vermeersch wanted to change her will. The attorney then went to her home to discuss the will and she told him which sections of the old 1966 will she wanted deleted. The 1966 will provided for a $10,000 bequest to her daughter, Rosalie Lewin, a $5,000 bequest to the secretary, Kathryn Jackson, $2,000 to Mrs. Vermeersch's granddaughter, and $2,000 to St. Mark's Catholic Church. The rest of her estate would have gone to her husband, Jules L. Vermeersch. Under the 1968 will, the specific bequests were deleted, and her entire estate went to her husband in the event she died first. At the same time Mrs. Vermeersch executed her new will, Mr. Vermeersch executed a new will. Attached to his will was an election under which Mrs. Vermeersch agreed that if he died first, she would take a trust fund in lieu of her community property interest. At her death, the entire community estate would then pass according to his will. Under his will, the bulk of the estate went to Kathryn Jackson and her sister, Jewel Dillehay. Mr. Vermeersch was, of course, free to change his will after his wife's death on April 8, 1969, and, in fact, executed a new will in October of 1969.

The only will under question in the instant case is Mrs. Vermeersch's.

■ The law presumes that the testatrix had the requisite testamentary capacity. To successfully challenge the validity of the will for lack of testamentary capacity, the burden was on the contestant to prove a lack of one of the following elements: (a) the ability to know the nature and extent of one's property, (b) the ability to know the natural objects of one's bounty, and (c) the ability to understand the nature of the testamentary act. In re Stitt's Estate, *supra*.

■ On review, we hold that contestant failed to meet the required burden of proof and that there was no evidence to support the finding of the jury of lack of testamentary capacity. The two witnesses to the execution testified that Mrs. Vermeersch knew she was making a will disposing of her property and that she was alert and competent. One of the witnesses read the will to her, speaking loudly into the ear she could hear out of better. Several times during the reading she asked him to stop and read a section over again. When he was through reading, he asked Mrs. Vermeersch if she wanted the whole will reread and she said no, that she understood the will. The new will was written according to Mrs. Vermeersch's instructions to her attorney. She clearly knew her daughter but had made a conscious decision to leave her share of the community property to her husband of 63 years. Months later, Mrs. Vermeersch told her nurse in the nursing home that if she died first, all her property would go to Mr. Vermeersch and that if he died first, she would be provided for under the will.

■ With regard to undue influence, again the law presumes that Mrs. Vermeersch was not acting under undue influence when she executed her will. In re Estate of O'Connor, 74 Ariz. 248, 246 P.2d 1063 (1952). The presumption would switch to one of undue influence if the following facts were true: (1) that Jules Vermeersch occupied a confidential or fiduciary relationship to the decedent, (2) that he was active in the preparation of the will, and (3) that he was the sole beneficiary. He was active in the

preparation of the will and was the sole beneficiary, but the marital relationship is not one of the confidential relationships giving rise to the presumption of undue influence. In re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966).

The burden was then on the contestant to prove that the will was the product of undue influence executed on the testatrix. This will was reasonable and natural in view of Mrs. Vermeersch's circumstances, attitudes and family. The Vermeersches had been married for 63 years and Mrs. Vermeersch was devoted to her husband. The will was inconsistent with the prior will which left the contestant $10,000, but was absolutely consistent with declarations made to the nurse at the rest home months after the will was executed. The testatrix may have been senile and unusually susceptible to undue influence, but the contestant failed to show that she was. Of the five doctors who testified regarding the effects of arteriosclerosis, four had never seen or talked with Mrs. Vermeersch, and the fifth, who had seen and talked with her, in December of 1967, testified that she carried on an intelligent conversation and knew who she was, where she was and what she was doing and saying. There was evidence that Kathryn Jackson contributed to the testatrix's belief that the contestant was only after her parents' money and that she wanted to have her father committed. However, even assuming the evidence against Kathryn was all true, Kathryn Jackson and her sister were not beneficiaries of the contested will. In fact, Kathryn stood to inherit $5,000 under the 1966 will and inherits nothing under the contested 1968 will.

The issue in the instant case is whether Jules L. Vermeersch unduly influenced his wife to ignore her own wishes and to write her will in accordance with his wishes. We find no such evidence in the record under the circumstances. Nothing could have been more natural than for Mrs. Vermeersch to leave her estate to her husband of some 63 years.

In light of our holdings regarding testamentary capacity and undue influence, we find it unnecessary to discuss issues (2), (3) and (4) so raised by appellant.

The judgment of the lower court is reversed and the cause remanded with instructions to enter judgment admitting the will to probate.

CAMERON, V. C. J., and STRUCK-MEYER, J., concur.