[Civil No. 3101. Filed May 31, 1932.]

[11 Pac. (2d) 947.]

In the Matter of the Estate of JOHN N. GREENE, Deceased. BEUTHAL W. GREENE, Named as Executor of the Last Will and Testament of JOHN N. GREENE, Deceased, Appellant, v. MATILDA M. GREENE, Appellee.

Messrs. Struckmeyer & Jennings and Mr. George F. MacDonald, for Appellant.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellee.

LOCKWOOD, J.—This is an appeal from an order of the superior court of Maricopa county denying probate to the will of John N. Greene, hereinafter called testator, on the ground that at the time the will was executed he "was not of sound mind and memory and was not competent to make a will or to make any testamentary disposition of his property whatsoever."

The sole question raised on the appeal is whether the evidence was sufficient to authorize the trial court in reaching such a conclusion. It is, of course, the law in this jurisdiction that the findings of the trial court on a question of fact will not be disturbed by this court if there is any reasonable evidence in the record which would sustain the findings.

The facts, considering the evidence in the strongest light in favor of appellee, may be stated as follows: The testator herein was approximately fifty years of age at the time of his death, and Matilda M. Greene, the appellee, whom he married in the year 1926, was about forty-five. Testator at the time of his marriage owned a considerable amount of real

estate in the Salt River Valley and was also interested in certain property in Mississippi. For many years he had assisted materially in the support and education of certain of his nephews and nieces, among them Beuthal W. Greene, appellant herein, and the latter had been residing with him for some time.

Shortly before the marriage the testator deeded to appellee eighty acres of desert land situated under the Paradise Verde project, for which she paid all told approximately $1,600 out of funds she had earned before the marriage. This land was later sold and apparently the proceeds were all eventually used for community purposes. After the marriage she worked a considerable portion of the time, and her earnings eventually were exhausted in community expenses.

Apparently their domestic relations were harmonious until some time in the year 1928, when they had a serious quarrel over appellant. According to appellee, she objected to appellant living with herself and testator unless he paid a reasonable amount for board and room, while the testator seemed to think it was perfectly proper for him to remain without such payment. The matter, however, was patched up on the surface, but some feeling apparently remained among the parties in regard to the transaction.

In September, 1929, testator was taken ill and grew steadily worse until January, 1930, when he suffered from a slight paralytic attack as the result of an embolus which eventually lodged in his foot. Gangrene soon set in and it was necessary to amputate his leg above the knee in order to prolong his life, although according to his attending physician he was suffering from valvular heart trouble, which was progressive in its nature, and it was only a question of a greater or lesser time until such affliction would cause his death.

From the date of the amputation onward during the months of February and March testator was delirious at times and admittedly during that period had various mental delusions. On the other hand, during most of that time he was apparently perfectly normal mentally. The strain of caring for him was great, both physically and financially, and his family and friends seriously considered attempting to have him committed to the state hospital for the insane, but, as he improved, abandoned the idea.

Along in the late spring testator decided to sell the house in which he and appellee then lived (which was his separate property) in order to raise money to pay off his debts and to secure further medical treatment. Appellee objected to this at first, but eventually consented, and the transfer was finally made about the middle of June. It then became necessary for the testator and his wife to seek other quarters, as the purchaser desired possession of the premises, and he wished to remove to the home of his nephew, the appellant herein, although appellee's brother had offered to allow the parties to use one of his vacant houses rent free so long as they desired. Due to the strained feeling between appellee and appellant, she declined to go to appellant's house when her husband did, but went to her brother's place, and remained there until the death of the testator, which occurred on the 14th of July. During this period, although she several times visited the neighborhood of appellant's premises, she never went to see her husband. He apparently knew of this fact and resented it.

On the tenth day of July his attorney prepared a will, which was duly executed, in which he left practically all of his property to his own relatives, inserting the following clause regarding his wife:

"Second: I give and bequeath to my wife, Matilda May Greene, the sum of One ($1.00) Dollar, not with

the idea of cutting her out of my estate, but for the reason that she has heretofore received, by deed, Eighty (80) acres of land located in Maricopa County, State of Arizona, from my separate estate.''

When the will was offered for probate this contest was filed, appellee claiming that it was executed under the undue influence of appellant and his brother and sister, and also that testator was not competent at the time the will was executed. The trial court found, as we have stated above, that testator was incompetent, but made no finding on the question of undue influence. Without going further, we may say there is no evidence in the record justifying any finding that any undue influence was exercised by appellant or by his brother or sister in regard to the making of the will.

The sole question before us is whether the evidence sustains the finding that testator had no testamentary capacity on the tenth day of July, the time when the will was made. In passing upon this question we consider first the rules of law applicable to the situation disclosed. These are well stated by the Supreme Court of California in the recent case of *In re Perkins' Estate,* 195 Cal. 699, 235 Pac. 45, as follows:

''It is well settled that, upon the contest of a will on the ground that the deceased was of unsound mind, the actual mental condition of the testatrix at the time of the execution of the will is the question to be determined. *Estate of Dolbeer,* 149 Cal. 227, 9 Ann. Cas. 795, 86 Pac. 695; *Estate of Little,* 46 Cal. App. 776, 189 Pac. 818; *Estate of Casarotti,* 184 Cal. 73, 192 Pac. 1085. Evidence as to mental condition before or after the execution of the will is important only in so far as it tends to show mental condition at the time of the execution of the will. The presumption is always that a person is sane, and the burden is always upon the contestants of the will to show affirmatively, and by a preponderance of the

evidence, that the testatrix was of unsound mind at the time of the execution of the will. *Estate of Dow,* 181 Cal. 106, 183 Pac. 794; *Estate of Little, supra; Estate of Allen,* 177 Cal. 668, 171 Pac. 686; *Estate of Casarotti, supra; Estate of Johnson,* 152 Cal. 778, 93 Pac. 1015; *Estate of Wilson,* 117 Cal. 262, 49 Pac. 172, 711. . . .

"Every mental departure from the normal will not destroy a testamentary disposition, otherwise valid, of the testatrix's estate. It is not the rule of law that no person who is insane may make a valid will. The real rule is that the will of a person, who by reason of insanity is incapable of making valid testamentary disposition of his estate, shall not be upheld. *Estate of Chevallier,* 159 Cal. 161, 113 Pac. 130; *Estate of Wasserman,* 170 Cal. 101, 148 Pac. 931.

"Mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) Insanity of such broad character as to establish mental incompetency generally; or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion. Even in the latter class of cases, it is not sufficient merely to establish that a testator was the victim of some hallucination or delusion. The evidence must establish that the will itself was the creature or product of such hallucination or delusion; that the hallucination or delusion bore directly upon and influenced the creation and terms of the testamentary instrument. The evidence must establish, in addition to the fact of the existence of the hallucinations or delusions, the fact that by reason of these hallucinations or delusions the testatrix devised or bequeathed her property in a way which, except for the existence of such delusions, she would not have done. In short, the abnormality of mind must have had a direct influence upon the testamentary act. *Estate of Chevallier, supra; Estate of Collins,* 174 Cal. 663, 670, 164 Pac. 1110; *Estate of Redfield,* 116 Cal. 637, 48 Pac. 794; *Estate of Casarotti, supra.* . . . "

Applying this test to the evidence, there is no testimony which would sustain a finding that the tes-

tator was mentally incompetent generally. On the contrary, it is overwhelming to the effect that except during certain times in the months of January, February and March, when he was suffering great pain and worried over his physical condition, his mental capacity was good. He transacted considerable general business during and after this period, and the persons who did business with him stated that he displayed a full understanding of what he was doing. Even the witnesses for appellee admitted that most of the time he appeared perfectly competent. They based their testimony that in their belief he was not mentally competent to make a will principally on the fact that he unquestionably suffered from certain delusions during and shortly after his confinement to his bed.

We consider then whether testator suffered from some specific and narrow form of insanity which would invalidate his will. The rule is that even though a testator does suffer from delusions or hallucinations, unless the will itself was a creature or product of such delusions or hallucinations it is not invalid. Let us consider the evidence as bearing upon this matter. The only thing which it might be contended fell within this qualification is that testator became convinced, according to the testimony of some of the witnesses, that his wife had only married him for his money, and that she had not treated him in a proper manner, and for that reason he would leave his property to his nephews and nieces, whom he believed had always been affectionate and dutiful.

The mere fact that a person may dislike a relative, even his wife, with or without reason, is not evidence of insanity. *Estate of Carpenter,* 94 Cal. 406, 29 Pac. 1101; *Estate of Kendricks,* 130 Cal. 360, 62 Pac. 605; *In re Spencer,* 96 Cal. 448, 31 Pac. 453.

We must differentiate between a mere dislike and a true mental derangement. It appears from the

uncontradicted testimony of appellee herself that she had had a bitter quarrel with her husband over his relations with appellant; that she had asked him to repay her from the proceeds of the sale of the home, which was his separate property, for the money she had spent out of her earnings in the general care of the household during his illness, although such earnings were, of course, community property; and that after he had moved to the home of his nephew, although she was in the neighborhood at least twice, she had deliberately refrained from visiting him. While she may have been justified in her conduct all through these matters, yet a belief of testator as to her attitude toward him based on these circumstances was not so utterly unfounded as to be evidence of an insane delusion which affected the will itself. The testator may have been mistaken in the conclusions which he drew from his wife's conduct, but those conclusions were not so unwarranted, especially in view of the fact that the property in question was all accumulated by him before the marriage, that we can say that they show he was mentally incompetent to make a will. Nor is a court concerned with the abstract justice or injustice of a will. *In re Spencer, supra.* Unless it clearly appears the testator did not fully realize what he was doing with his property, it was his to dispose of as he pleased.

It would serve little purpose for us to review and analyze the specific testimony of each witness, as it could be of no value as a precedent in any other case, and would unduly extend this opinion.

Much as we dislike to disturb the findings of a trial court, we are impressed, after a careful examination and analysis of the entire transcript of evidence, that there is not sufficient evidence from which a reasonable man could find that on the tenth day of July, when the will was made, the testator was mentally de-

ranged to the extent that it invalidated the will then made by him.

For the foregoing reasons the order of the superior court of Maricopa county is set aside and the case remanded, with instructions to admit the will to probate.

McALISTER, C. J., and ROSS, J., concur.