[Civil No. 4059. Filed June 5, 1939.]

[91 Pac. (2d) 254.]

In the Matter of the Estate of EMMA O. SMITH, Deceased. MARIA B. SMITH, Appellant, v. CHRISTINE OLWIN SUTTON, as Administratrix With the Will Annexed of the Estate of EMMA O. SMITH, Deceased, and CHRISTINE OLWIN SUTTON, Legatee and Devisee, Appellee.

Messrs. Sloan, Scott & Green and Mr. Matt S. Walton, for Appellant.

Messrs. Snell & Strouss and Mr. Mark Wilmer, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Maricopa county denying the petition of Maria B. Smith, hereinafter called petitioner, to set aside and revoke the probate of a certain will.

The facts out of which the case arose may be stated as follows. Frank O. Smith and Emma O. Smith, the latter hereinafter called deceased, for many years were husband and wife, but had no children. On the 14th day of July, 1928, each executed a will, the legal effect of these instruments being that if Frank O. Smith died first all of his estate passed to his wife, Emma O. Smith, while if she died first all of her property passed to him. It clearly appeared, however, from the respective wills that it was the wish, intention and expectation of both parties that after they had both passed away half of their entire estate should pass to the mother of Frank O. Smith and her heirs, while the remaining half should pass to the niece of Emma O.

Smith and her heirs. The wills, however, were so drawn that when either of the testators died, the entire property would pass to the survivor in fee simple and subject, as a matter of law, to a change at will in the ultimate disposal of the estate. In view of the fact that there were no children of the marriage, the intention which clearly appeared in both wills would be considered by an ordinary man as a natural and just ultimate disposition of the estate. In the summer of 1936, both Frank O. Smith and Emma O. Smith became seriously ill, and the former died in Long Beach, California, on or about September 18, 1936. His body was returned to Arizona for burial, accompanied by Mrs. Smith, and she was taken directly to the Good Samaritan Hospital in Phoenix, where she remained until her death on December 13, 1936. On September 25th, seven days after the death of her husband, deceased executed a new will which revoked her will of July 14, 1928, and left her entire estate, which included at that time the share of Frank O. Smith in the community estate of the two spouses, apart from a few minor bequests, to her niece, Christine Olwin Sutton, the respondent herein, although she was advised at the time by her counsel that this would defeat the plainly expressed wish of her late husband. No executor was named in this will of September 25th, but the respondent was appointed administratrix with the will annexed of the estate of Emma O. Smith, and also administratrix with the will annexed of the estate of Frank O. Smith.

Within the statutory time this proceeding was commenced by petitioner to revoke the probate of the will of September 25, 1936, on the ground that it was obtained by the undue influence of the respondent, and that deceased was incapable physically and mentally of executing a will on the date last named. A jury was demanded and the trial extended over a period of four

days, at the end of which the court, on motion of the respondent, instructed the jury to return a verdict that at the time of the execution of the will in contest Emma O. Smith was of sound mind, and that the will was not obtained through the undue influence of respondent. Judgment was entered upon the verdict and this appeal was taken.

There are two questions of law raised on this appeal. The first is whether the court erred in rejecting evidence in regard to certain alleged insane hallucinations and delusions which it is claimed led deceased to execute the will in contest; and the second, that there was sufficient evidence to go to the jury on the question of the testamentary capacity of the deceased.

 There are certain general provisions of law governing a will contest, which we have previously set forth in the case of *Greene* v. *Greene,* 40 Ariz. 274, 11 Pac. (2d) 947. Those applicable to the present situation may be restated as follows: The presumption always is that a person is sane and the burden is upon the contestants of a will to show affirmatively and by a preponderance of the evidence that the testatrix was of unsound mind at the time of its execution. But not every mental departure from the normal will destroy a testamentary disposition otherwise valid. It is not the law that no person whose mentality is abnormal may make a valid will. Mental derangement sufficient to invalidate a will must be insanity in one of two forms, (a) of such a broad character as to establish mental incompetence generally, or (b) some specific form of insanity under which the testator is the victim of a hallucination or delusion. But even in the latter class of cases it is not sufficient to establish that the testator was suffering from some hallucination or delusion. It must also appear that the will itself was the creature of such a condition, and that

the latter bore directly on and influenced the creation and terms of the instrument. In other words, that by reason thereof the testatrix devised or bequeathed her property in a manner which otherwise she would not have done. Nor is it sufficient that the testatrix was actuated by a mere dislike or by erroneous conclusions drawn from existing facts and circumstances. Neither can the fact that the terms of the will are contrary to the ordinary notions of equity, or the usual conduct of mankind, affect the question of its validity. No matter how much we may reprobate the conduct of a testator from the standpoint of natural justice, or even of humanity, we may not on that account permit his will to be set aside unless it clearly appears that he did not fully realize what he was doing with his property, for it is his to dispose of as he pleases.

We consider first whether the court erred in refusing to admit certain testimony, which it is claimed by petitioner would show that the will was executed by reason of hallucinations or delusions. Something like a month after the will was executed, deceased made a statement to the effect that she knew her husband's mother was fixed financially for the balance of her life, and that there were reasons why it was not either necessary or advisable that her husband's brothers should participate in the estate. The petitioner offered to show in rebuttal that at the time the contested will was executed she was in somewhat straitened financial situation and had a very limited income, and that her surviving sons were not very well off financially. The trial court refused to admit evidence of this nature, on the ground that it was immaterial as to what the actual financal condition of petitioner was. It was the contention of petitioner that the statement of deceased showed that she was laboring under an insane delusion in regard to the financial status of pe-

titioner, which prompted or controlled the execution of the will in contest.

We think the correct rule is laid down by the Supreme Court of California in *Re Perkins' Estate*, 195 Cal. 699, 235 Pac. 45, 49:

"Care must be taken to differentiate between mere unreasonable opinions and mental derangements. Testamentary capacity does not depend upon the testatrix's ability to reason logically or upon her freedom from prejudice. . . .

"If all mistaken beliefs were to be catalogued as delusions, few indeed would escape the stigma of insanity."

A mere mistaken belief on the part of deceased that petitioner's financial situation was better than it really was cannot of itself be considered an insane delusion, such as would permit the setting aside of a will, even though it appear that if testatrix had known the true facts she would have executed a different will. It must appear not merely that the testatrix was mistaken in the facts, but that the mistake was caused by a mental derangement instead of a mistake as to the facts, in reasoning thereon, or the conclusions drawn therefrom.

We think the trial court did not err in rejecting the offer of petitioner to show the true financial situation of herself and her surviving sons.

There remains the question of the general competency of the deceased. As was said in the Greene case *supra* (40 Ariz. 274, 11 Pac. (2d) 949)

"It would serve little purpose for us to review and analyze the specific testimony of each witness, as it could be of no value as a precedent in any other case, and would unduly extend this opinion."

We have examined and weighed carefully all the evidence in the case. Taking the testimony on behalf of petitioner at its strongest probative value, we

think it is sufficient to show that at various times during her illness and before her death, deceased was very ill physically, was grieving greatly at the death of her husband, and at times was not competent to transact ordinary business, but that it utterly fails to justify the conclusion that at the time she executed her will she did not fully realize what she was doing with her property and intend to do the very things which she did. It is true, as urged by petitioner, that her conduct showed an utter disregard for the understanding which she had obviously had with her husband in regard to the ultimate disposition of their joint estate, and a willingness to thwart his wishes within a few days after his death. Whatever we may think of the moral aspects of the case, we are bound by the legal situation as it exists, and we are compelled to say that in our opinion the law requires an affirmance of the judgment of the trial court.

Judgment affirmed.

ROSS, C. J., and McALISTER, J., concur.