252 P.2d 789

In re WAGNER'S ESTATE.

WAGNER v. VALLEY NAT. BANK OF PHOENIX.

No. 5512.

Supreme Court of Arizona.

Jan. 28, 1953.

Harold R. Scoville, of Phoenix, for appellant.

Rawlins, Davis, Christy, Kleinman & Burrus, and Robert H. Armstrong, all of Phoenix, for appellee.

UDALL, Justice.

This is an appeal by a surviving wife, Alice R. Wagner, hereinafter called contestant, from a judgment admitting to probate the will of her late husband, Jesse O. Wagner, deceased, hereinafter called testator. Contest of the will was predicated upon the ground that testator " * * * was not competent to make a Last Will and Testament because of insanity and unsoundness of mind. * * *"

■ The legal question raised is whether there was a conflict in the evidence sufficient to allow the trial court, sitting without a jury, to reach the conclusion that testator was competent to make a will. Contestant's one assignment of error states that the court erred in admitting the will to probate " * * * for the reason that evidence affirmatively showed that the Testator was not at the time of the execution of said Will, competent because of his unsoundness of mind and insanity." It is the law in this jurisdiction that findings of the trial court on a question of fact may not be disturbed on appeal if there is reasonable

evidence in the record to sustain them. This principle is recognized but contestant urges " * * * that upon the entire evidence reasonable men could not differ" in the conclusion that testator was not competent because of unsoundness of mind and insanity.

The insanity alleged by contestant was not of such broad character as to establish testator as mentally incompetent generally but the insanity, it is claimed, was such that the Will was affected by reason of an insane delusion that his wife and stepdaughter were conspiring against and persecuting him.

■ The law governing will contests involving this type of insanity is well settled in this jurisdiction. Counsel for both contestant and the executor, Valley National Bank of Phoenix, proponent of the will, rely upon the cases of Estate of Green, 40 Ariz. 274, 11 P.2d 947, and Estate of Smith, 53 Ariz. 505, 91 P.2d 254, wherein the applicable rules of law are fully set forth. Limiting ourselves to the rule concerning hallucinations and delusions, we quote from the Green case, supra [40 Ariz. 274, 11 P.2d 949], as follows:

" 'Mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) Insanity of such broad character as to establish mental incompetency generally; or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion. Even

in the latter class of cases, it is not sufficient merely to establish that a testator was the victim of some hallucination or delusion. The evidence must establish that the will itself was the creature or product of such hallucination or delusion; that the hallucination or delusion bore directly upon and influenced the creation and terms of the testamentary instrument. The evidence must establish, in addition to the fact of the existence of the hallucinations or delusions, the fact that by reason of these hallucinations or delusions the testatrix devised or bequeathed her property in a way which, except for the existence of such delusions, she would not have done. In short, the abnormality of mind must have had a direct influence upon the testamentary act. * * *" (Citing cases.)

This will contest took two and one-half weeks to try and the transcript covers the testimony of over two score witnesses, being 1539 pages in length. We shall, therefore, briefly set forth the facts without analyzing the testimony of each witness as this would serve no useful purpose, since it could be of no value as a precedent in any other case and would unduly lengthen this opinion.

Testator and contestant were married in Cleveland, Ohio, in 1940, shortly after he had recovered from a nervous breakdown. Contestant had a teenage daughter named Jeanne, by a former marriage. In 1945 the family came to Arizona to winter. Return-ing later they purchased a house in Phoenix which thereafter they made their home. Testator had established and successfully operated an electroplating-rust proofing firm in Cleveland which was sold in 1946.

At his death on April 13, 1951 testator's estate consisted of approximately $500,000 invested primarily in stocks and bonds, over $300,000 of which was in United States Government Bonds, series G, which passed by operation of law to contestant who was named therein as co-owner.

The will that was admitted to probate was executed March 11, 1951, some 33 days prior to the time testator destroyed himself. By the terms of the last will contestant was left one dollar, whereas, in a will executed in 1946 she was the principal beneficiary—being named as residuary legatee.

According to the evidence adduced by contestant, between Thanksgiving and Christmas of 1950 the actions and attitude of testator toward his immediate family began to change. He became sensitive and suspicious of the purposes of his wife and those close to him. His dress and manners changed and he developed other eccentricities foreign to his former behavior and markedly different to socially acceptable comportment. As a result thereof contestant, on advice of her minister, doctor and attorney, in order to induce testator to submit to psychiatric care and to protect the family assets, commenced an action for divorce and some preliminary orders had

been issued therein prior to testator's suicide.

Both Dr. William B. McGrath of Phoenix and Dr. Richard E. Stout of Cleveland, qualified psychiatrists who treated and examined testator during this period and who had also treated testator on other earlier occasions, testified that in their opinion he was not sane at the time the will was executed and they both diagnosed his illness as "paranoid condition". Dr. McGrath's definition of the illness, which is in accord with the other medical testimony, is as follows:

"Paranoid condition is a mental illness characterized by ideas of mixed persecutions and grandeur * * * the result originally of hostility in the individual on an unconscious level by virtue of which having hostility toward himself he begins to anticipate hostility from others, and, anticipating, to look forward with abnormal suspiciousness, misinterpretations of other innocuous things, and when he finds it delusionally or by misinterpretation, such an individual explains it himself by ideas of grandeur. * * * The illness itself is a long continuing, fixed reaction, gradually progressing toward ultimate deterioration. * * * the illness itself is not phasic. * * *"

▮ The medical evidence is in agreement that a person suffering from such an illness could mask it so that it would not be apparent to casual acquaintances, business associates or others not intimate with him. Also, that testator's illness would influence any judgment, ideas or acts of his which were motivated at all by emotion; that as the making of his will had strong emotional accompaniment and involved relationships with his wife it would be definitely influenced by such illness.

Besides the medical evidence, all of which supported contestant's view that testator was not competent to make a will and which included testimony of other doctors who had known and treated testator at different times, contestant, the stepdaughter and others intimately acquainted with the family all testified that, in their opinion, testator was insane.

On the other hand twenty-two witnesses, including business acquaintances, past employees, and lifelong friends, testified that in their opinion testator was sane.

We have carefully examined all the evidence in the case. The trial court might well have decided the matter in favor of the contestant and such action would have been upheld, but there is a conflict in the evidence when taken at face value. This court does not weigh the evidence nor determine the credibility of the witnesses. The medical testimony is not conclusive upon a matter of this kind for if it were there would be no reason why lay testimony on the subject should be admitted at all, yet it is universally held that such testimony is proper. Sapp v. Lifrand, 44 Ariz. 321, 36 P.2d 794;

Psychiatric Testimony in Probate Proceedings, 2 Law and Contemporary Problems 448. The trial court was at liberty to find on the conflicting evidence that testator was competent to make the will in question and we are bound by its findings.

Judgment affirmed.

STANFORD, PHELPS, LA PRADE and WINDES, JJ., concur.