433 P.2d 666

In the Matter of the ESTATE of Mae Holbrook SLATER, Deceased.

Tressia M. MOORE, Madelin McCumsey, Frances Bierly, Bureda "Rita" Lee, and Rita Jean Holbrook in behalf of and as next best friend of Phil Holbrook and Craig Holbrook (children of Vern Holbrook), heirs of Mae Holbrook Slater, Appellants,

v.

Lloyd HOLBROOK, Appellee.

No. I CA–CIV 446.

Court of Appeals of Arizona.

Nov. 21, 1967.

Rehearing Denied Dec. 15, 1967.

Review Denied Jan. 30, 1968.

Stephen W. Connors, Phoenix, for appellants.

Marlowe, States, Meyer & Vucichevich, by L. Dennis Marlowe, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal from the judgments in two separate cases which were consolidated for trial. The trial court admitted the last will and testament of the deceased, Mae Holbrook Slater, in the probate matter, and refused to create a constructive trust in the civil matter. The appellants are the surviving four daughters and two grandsons of the deceased. The appellee is the surviving son of the deceased, and the sole beneficiary under her will. The questions raised on this appeal are:

1. Was the deceased, Mae Holbrook Slater, of sound and disposing mind, and free from any undue influence at the time she executed her last will and testament dated 19 January 1965?

2. Whether or not there was an agreement between the testatrix and the appellee that the proceeds from her life insurance and the funds in her bank and savings accounts were to be held by the appellee as trustee for all the children of the testatrix?

The facts necessary for the determination of this matter are as follows. The testatrix was the mother of six children, four girls and two boys; five of whom survived the testatrix. The eldest son predeceased the testatrix leaving the two grandsons who joined as plaintiffs in this action. Prior to the making of her will the testatrix was suffering from incurable leukemia, and it was this disease that took her life on 25 January 1965. In August of 1964 the testatrix changed her savings accounts to joint tenancy accounts with her son Lloyd Holbrook. Prior to her entering of the hospital in December of 1964 the testatrix placed her son's name on her checking account. The testatrix entered the hospital early in December to go through a series of tests to determine the effect of the leukemia on her physical condition. She remained in the hospital until 24 December when she was released for the Christmas holidays. Thereafter, she continued to return for blood tests and transfusions until her death in January of 1965.

On 18 January 1965 the appellee made an appointment with an attorney unknown to the testatrix, for the attorney to come to the appellee's home for the purpose of making a will for the testatrix. The attorney was not able to meet with the testatrix on the scheduled evening, and on the following morning the appellee took her to the attorney's office. Due to the testatrix's physical condition she was not able to go to the attorney's office on the second floor of the building, and special arrangements were made by the attorney for her to occupy an office on the first floor of the building where she remained during the preparation of the will. There were two uninterested witnesses to the will, and both witnesses had an opportunity to speak with the testatrix and did speak with her prior to the execution of the will. It did not appear that there were any errors or omissions with reference to names, addresses, or descriptions of property contained in the will. The testatrix signed the will on the 19th of January 1965 naming the appellee, Lloyd Holbrook, as the principal beneficiary and omitted any bequests of her estate to her daughters or grandsons. She also named the attorney who prepared the will to be the executor and to serve without bond.

## WAS THE WILL EXECUTED UNDER UNDUE INFLUENCE?

It was contended by the appellants in the court below that the testatrix loved all her children and intended to divide her estate equally between her children and grandchildren. It was further contended by the appellants that the testatrix, because she was in the terminal stage of leukemia and under constant medication, was not of sound and disposing mind at the time she executed her will of 19 January 1965. Also, the leukemia took away her ability to resist the undue influence exercised upon her by the appellee prior to and at the time of the making of the will.

■ In a will contest such as the one before the Court the person attacking the validity of the will must produce evidence that one or more of the essential elements of testamentary capacity were missing at the time the will was executed. The test has been stated by the Arizona Supreme Court as follows:

"(1) Did she at the time she executed the will, understand the nature of the act she was doing? (2) The nature or character of her property? (3) Her relation to the persons who had claims upon her bounty and whose interests are affected by the terms of the instrument?" In Re O'Connor's Estate, 74 Ariz. 248, 259, 246 P.2d 1063, 1070 (1952).

The two witnesses to the will testified as follows. Mr. Ball:

"Q Now, did you have an opportunity there to observe her mental condition and her physical condition?

"A Yes.

"Q Could you describe what you observed her mental condition to be?

\*   \*   \*   \*   \*   \*

"A She was normal and she seemed happy and alert. She was—I could tell she may have been sick, but mentally, she—her mind seemed well and good to me."

And Mr. Robinson:

"Q Did you have an opportunity there to form any opinion as to her mental alertness or mental awareness or anything in the conversation there with her?

"A She was very alert.

"Q When the Will was presented to her for signing, did she seem to be reluctant or willing to sign or just what did you observe with reference to her signing the Will?

"A She actually seemed relieved after it was over."

■■ The testatrix is always presumed competent, and the burden is upon the persons contesting the will to show by a preponderance of the evidence that the testatrix was not of sound mind or under the pressure of undue influence at the time the will was made. Estate of Smith, 53 Ariz. 505, 91 P.2d 254 (1939), Estate of Greene, 40 Ariz. 274, 11 P.2d 947 (1932), Estate of Cook, 63 Ariz. 78, 159 P.2d 797 (1945), Estate of Morrison, 55 Ariz. 504, 103 P.2d 669 (1940).

■ The question before this Court and the court below is not whether the testatrix was fair or just in devising her entire estate to her younger son, but whether in making her will she complied with the statutes and case law on this subject. We think that the evidence was sufficient to justify a finding by the trial judge that Mrs. Slater was able to understand the natural objects of her bounty, the kind and character of her property, and the nature of the testamentary act she was performing. In view of the testimony by the witnesses to the will we can find no error in the trial court's determination upholding the validity of the will.

■ It is further contended by the appellants that a confidential relationship existed between the testatrix and the appellee, the principal beneficiary under the will, therefore, there was a legal presumption of undue influence. Our Court has stated:

"It is a law of this state that if there existed a fiduciary relationship between the

testator and the person actively taking part in the preparation of the will, and if such person is a 'principal beneficiary', then there arises a legal presumption of undue influence. It is further the law that once a person as to whom the undue influence is presumed takes the stand and negates such presumption by his testimony, the presumption disappears. In Re Pitt's Estate, 88 Ariz. 312, 356 P.2d 408 (1960)." In Re Thompson's Estate, 1 Ariz.App. 18, 23, 398 P.2d 926, 931 (1965).

During the trial the appellee was asked the following question:

"Q  All right. Did you at any time use influence of any kind on your mother to tell her what to put in that will?

"A  No, sir."

Although there may have been presumption of undue influence, that presumption disappeared as a result of the appellee's testimony.

## WAS THERE A CONSTRUCTIVE TRUST?

The second question raised in this appeal is whether or not the appellee should hold the proceeds from the joint accounts as constructive trustee for the other children and two grandchildren. When it would be unconscionable for the holder of the legal title to retain the beneficial interest of the property, on the theory that it was acquired by fraud, a constructive trust will arise by operation of law in favor of the person who is truly and equitably entitled to the property. Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955). And the burden is on the one alleging the trust:

> "Unquestionably, a person who wishes to impose a trust on a transaction which on its face appears to be a valid transfer must convince the trier of fact of the trust by clear and convincing proof." Smith v. Connor, 87 Ariz. 6, 9, 347 P.2d 568, 570 (1959).

Although the relationship of parent and child is a circumstance to be considered in establishing the confidential relationship which can support a constructive trust, Murillo v. Hernandez, supra, the burden is still on the one seeking to impose the trust. There has been no showing that the trial judge acted erroneously in failing to find that the son held the property as a constructive trustee.

Affirmed.

DONOFRIO and STEVENS, JJ., concur.