493 P.2d 112

In the Matter of the ESTATE of Eliza Jane
ROSE, also known as Eliza Jane
Norman, Deceased.

In the Matter of the ESTATE of Eliza Jane
NORMAN, also known as Eliza Jane
Rose, Deceased.

Henry G. NORMAN, Jr., Appellant,

v.

TRANSAMERICA TITLE INSURANCE
COMPANY, Appellee.

No. 10579–PR.

Supreme Court of Arizona,
In Banc.

Jan. 21, 1972.

Rehearing Denied March 21, 1972.

See 495 P.2d 138.

Divelbiss & Gage, by Carl W. Divelbiss, Phoenix, for appellant.

Lewis & Roca, by Charles Crehore, David L. Cocanower, Phoenix, for appellee.

UDALL, Justice:

This is an appeal from the trial court's denial of Petitioner's motions to set aside the decree of distribution as to his wife's estate and to deny the Petition for an Order of Final Discharge and Final Discharge of the Administrator of said estate. The Court of Appeals dismissed the appeal. Opinion of the Court of Appeals is hereby vacated.

This action centers around two separately instituted probate proceedings, both involving the estate of the same deceased person—Eliza Jane Norman, aka Eliza Jane Rose. Eliza Jane Norman died in Phoenix, Arizona, on December 29, 1965. She was survived by her husband, Henry G. Norman, Jr. (Appellant herein) and a number of distant relatives. At the time of her death Mrs. Norman owned an interest in the following described property, situated in Maricopa County:

Parcel I

A part of Lot Ten (10), Block Two (2), MURPHY'S ADDITION to the City of Phoenix, described as follows: BEGINNING at a point 147 feet North of the Southwest Corner of Lot 10; thence East 150 feet; thence North 49 feet; thence West 150 feet; thence South 49 feet to the point of beginning.

Parcel II

Lot Five (5), BROWN LOTS, according to the plat of record in the Office of the County Recorder of Maricopa County, Arizona, in Book 25 of Maps, page 20 thereof.

Parcel I had been owned by the deceased at the time of her marriage to Henry Norman in May, 1941, while Parcel II was acquired by the Normans during coverture.

In July of 1966, Mr. Norman consulted an attorney preparatory to probating the estate of his deceased wife. However, before probate proceedings were begun, Mr. Norman became ill and was forced to quit work for almost a year. Feeling he could not financially afford to bear the costs of administering his deceased wife's estate, nothing further was done until September 12, 1969, when he filed a petition in the Superior Court for Maricopa County, praying that letters of administration issue to him as administrator of the estate of Eliza Jane Norman, deceased.

In March, 1970, while in the process of checking some property in Oklahoma owned by his deceased spouse, appellant first learned that on November 12, 1968, Transamerica Title Insurance Company (hereinafter Transamerica Title) had filed a Petition for Letters of Administration

(Probate Cause No. 76043) in the Superior Court for Maricopa County. Said Petition for Letters stated, in part, that "Eliza Jane Rose, aka Eliza Jane Norman, *a single woman,* died intestate in the City of Phoenix," (emphasis added) and that at the time of the hearing on the petition one or more of the deceased's heirs would nominate Transamerica Title to act as administrator. The petition listed 17 known heirs, none of which resided in Arizona. While notice of the hearing was sent to each of the 17 nonresident heirs, notice was never sent to appellant, the surviving spouse. Notice of said hearing was duly published in the Tempe Daily News under the following caption: "In the Matter of the Estate of ELIZA JANE ROSE, aka ELIZA JANE NORMAN."

On December 2, 1968, at the hearing on the Petition for Letters of Administration, Celestine Glass Nash, a niece of the deceased, nominated Transamerica Title to be administrator of the Estate of Eliza Jane Rose, the order deleting the name of Norman. Notice to creditors was duly published and Parcel I, supra, of the deceased's property, held in the deceased's maiden name, was sold. The Order approving the sale was filed on July 2, 1969. By the time appellant learned of this prior proceeding, an order approving Transamerica's final account and report, and decree of distribution had been entered (November 21, 1969). Upon learning of this proceeding, appellant, by motion, sought to have the order of November 21, 1969, approving the final account and ordering distribution, set aside. On May 19, 1970, said motion was denied, and appeal was dismissed by the Court of Appeals, Division One.

While appellant has formulated a number of questions for our consideration, the crux of those questions is whether an administrator, nominated by a person who occupies an inferior position in the order of preference pursuant to A.R.S. § 14-417, can, without disclosing the name of the sole heir, confer jurisdiction upon the Superior Court to distribute said estate to persons other than the rightful heir?

A person who occupies an inferior position in the order of preference set forth in A.R.S. § 14-417 may act as administrator or may appoint an administrator, subject, however, to a preferential claim and prior court approval. A.R.S. § 14-420 specifically provides that letters of administration are to be granted to the petitioner "although it appears there are other persons having better rights to the administration if such persons fail to appear and claim the issuance of letters," and the validity of a person's appointment as administrator may not be collaterally attacked if there is no jurisdictional defect appearing on the face of the proceedings. Ray v. Sommer, 14 Ariz.App. 160, 481 P.2d 530 (1971). In the case at bar the Superior Court clearly had jurisdiction to entertain the proceedings. While the decree of distribution is, by virtue of A.R.S. § 14-704, conclusive of the rights of heirs, legatees or devisees, this does not mean that defrauded parties have no legal recourse. It is well established that in probate proceedings (where the final decree of distribution is made in conformity with the law), the final decree of distribution, when approved by the court, is conclusive as to every matter involved and constitutes a bar to further proceedings concerning the same matter. In re Pedelty's Estate, 61 Ariz. 425, 150 P.2d 362 (1944), but if the decree was procured by fraud:

" * * * then equity will do justice by declaring that the distributees hold the property in trust for the rightful owners.

" 'It may be stated as a general rule that where the action of the successful party in probate proceedings, in concealing or failing to disclose to the court the existence of a person interested in the estate, amounts to fraud of any kind, and the defrauded person has thereby been prevented from learning of the proceeding or asserting his claim therein; *the fraud is extrinsic, rather than intrinsic, and such person is entitled to equitable relief against the decree of the probate court.'* Anno.—Probate Proceed-

ings—Extrinsic Fraud. 113 A.L.R. 1235. (Emphasis supplied.)

"See also: Banc.Prob.Prac.2d, Vol. 5, Sec. 1177; Trusts and Trustees, Bogert, Vol. 3, part 1, Sec. 477, p. 46; Hewett v. Linstead, 49 Cal.App.2d 607, 122 P.2d 352; Francon v. Cox, 38 Wash.2d 530, 231 P.2d 265; Hewitt v. Hewitt, 9 Cir., 17 F.2d 716. As is pointed out in Caldwell v. Taylor, 218 Cal. 471, 23 P.2d 758, 759, 88 A.L.R. 1194:

"'* * * Since the probate of a will is a matter exclusively within the jurisdiction of the probate court equity may not set aside the probate, but it may declare the beneficiary a trustee for those who have been defrauded. * * *'

"It is a fundamental principle of equity that no one can take advantage of his own wrong. See, Butterfield v. Nogales Copper Co., 9 Ariz. 212, 217, 80 P. 345. As is stated in 89 C.J.S., Trusts, § 139 a.:

"'* * * So, the doctrine of constructive trust is an instrument of equity for the maintenance of justice, good faith, and good conscience, resting on a sound public policy requiring that the law should not become the instrument of designing persons to be used for the purpose of fraud. * * *' (Emphasis supplied.)"

Honk v. Karlsson, 80 Ariz. 30 at 33, 292 P.2d 455 at 457 (1956).

■ A constructive trust arises by operation of law and not by agreement or intention. Brown v. Walls, 10 Ariz.App. 168, 457 P.2d 355 (1969); Cordoba v. Wiswall, 7 Ariz.App. 144, 436 P.2d 922 (1968). It is a remedial device, Condos v. Felder, 92 Ariz. 366, 377 P.2d 305 (1962), used whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest. Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955); In re Slater's Estate, 6 Ariz.App. 486, 433 P.2d 666 (1967). To justify the imposition of a constructive trust, it is necessary only that the evidence be clear and convincing and it need not be proved beyond a reasonable doubt. L. M. White Contracting Co. v. Tucson Rock and Sand Co., 11 Ariz.App. 540, 466 P.2d 413 (1970).

In Honk v. Karlsson, supra, this Court stated:

"* * * where the evidence shows the prevailing party, by some extrinsic or collateral fraud, has imposed upon the court by preventing a fair submission of the controversy a constructive trust will be declared. 'Extrinsic fraud' may consist in deception practiced by the successful party in purposely keeping his opponent in ignorance of the proceedings so that an appearance will not be made in court. See, Zaremba v. Woods, 17 Cal.App.2d 309, 61 P.2d 976. 981." 80 Ariz. at 34, 292 P.2d at 458.

■ While the majority in *Honk* found no fraud to have existed by virtue of Emma Honk's statements claiming herself to be the "only surviving heir of David Swanson, deceased" and therefore held no constructive trust to exist, we are of the opinion in this case that appellant has established a strong case for a finding of fraud. This opinion is based on the following facts:

1. 17 out-of-state heirs were located while appellant who continuously resided with his wife during their married life for more than 20 years in Phoenix was not.

2. The married name of "Norman" was known as evidenced by the Petition for Letters of Administration.

3. The original Petition for Letters of Administration, Notice of Hearing Petition and Affidavit of Mailing Notice were all entitled "In the Matter of the Estate of Eliza Jane Rose, aka Eliza Jane Norman" but all subsequent captions including Notice to Creditors and Order of Appraisers were captioned in the name of "Eliza Jane Rose" only, a name she had not used since her marriage to appellant in 1941.

4. The residence the appellant and his wife lived at continuously until her death

was according to the record either the property actually probated by respondent (Parcel I) or in close proximity to the property probated.

5. The Notice of Hearing Petition captioned "Eliza Jane Rose aka Eliza Jane Norman" appeared in the Tempe Daily News. The residence of the decedent, though, as well as the property probated were both situated in the City of Phoenix.[1] The Notice to Creditors did appear in the Phoenix Gazette but it was entitled "Eliza Jane Rose" only. This fact suggests fraud not only as to appellant but to creditors as well, if any existed.

6. If appellant had been notified there is no question as to his legal right to the property. Pursuant to A.R.S. §§ 14–201 and 14–203, there being no surviving children or parent, whether the property herein be considered separate property or community property of the deceased, all right, title and interest of the deceased in said property vested in her surviving spouse (Henry Norman, Jr.) upon the death of decedent, Eliza Jane Norman.

7. There appears to have been no investigation (there is no record on this) into the name of "Norman" by the heirs or administrator since an inquiry into any of the following would have revealed the existence of the appellant:

a. Marriage records of Maricopa County, the county where appellant and his wife lived continuously for over 20 years and the county where the land probated is situated.

b. Assessor's or Recorder's Office— this would have revealed the existence of Parcel II located in Maricopa County, title being in the names of "Henry Norman, Jr. and Eliza Jane Norman."

c. Eliza Jane Norman's death—one of the principal duties of the administrator

is to ascertain the expenses of the last illness and funeral expenses. Inquiry into this would have revealed that Eliza Jane was survived by her husband who arranged for, and paid the expenses of, his wife's funeral.

d. Tax rolls.

e. Voters List.

f. City Telephone Directories.

On the basis of the facts, as they were presented to us, it would appear that fraud has been established by clear and convincing evidence. However, this matter will be submitted to the trial court in order that the appellee be given the opportunity to rebut the facts as presented by the appellant and raise any other defenses in his behalf. While the Court in *Honk* had before it, in making its determination, a full record with sworn testimony of the parties and interested witnesses, depositions of the out-of-state heirs, the efforts made to find the existence of such other heirs, correspondence, etc., we lack such a record from below. There has been no trial on the issue of fraud, nor on any finding of fact. If the facts are established, on remand, to be as they appear in this decision and the appellee is unable to satisfactorily rebut them or raise any defenses relative to them, the appellant will be entitled to the relief requested.

Reversed and remanded for a trial de novo.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

NOTE: Justice UDALL was assigned this case prior to his retirement and was recalled by court order to complete same. Justice WILLIAM A. HOLOHAN did not. participate.

---

1. We recognize that this technically complies with the requirement of a "general circulation" newspaper.