21 Ariz. App. 278 (1974)
518 P.2d 995
In the Matter of the ESTATE of Ruth Bank WEIL, Deceased.
Daniel BANK and David Bank, Appellants,
v.
GREAT WESTERN BANK, Appellee.
No. 1 CA-CIV 2012.
Court of Appeals of Arizona, Division 1, Department B.
February 13, 1974.
Rehearing Denied March 19, 1974.
Review Denied April 23, 1974.
*279 Carmichael, McClue & Stephens, P.C., by Ronald Carmichael, Phoenix, for appellants.
Snell & Wilmer, by Bruce Norton, Phoenix, for appellee.
*280 OPINION
JACOBSON, Chief Judge, Division 1.
This appeal questions various evidentiary rulings of the trial court in an action in which a jury ultimately found that the deceased had testamentary capacity at the time she executed her will and a codicil thereto.
The contestants-appellants, Daniel Bank and David Bank, the natural children of the deceased, Ruth Bank Weil, raised a narrow issue in the contest of their mother's will  whether she knew and understood the natural objects of her bounty. They conceded that their mother knew the nature and extent of her property and knew and understood the nature of her acts when she executed her will in July, 1969, and her codicil in May, 1970.
This matter was tried to a jury which, by answers to special interrogatories, determined that Mrs. Weil possessed full testamentary capacity upon both dates in question. Judgment was entered upon this determination and following denial of post-trial motions, this appeal was taken.
The facts of this case are as follows: Ruth Bank Weil was formerly married to Dr. Joseph Bank and as a result of this marriage two children were born, Daniel and David Bank. In 1961, Dr. Bank died after a long illness. Following the death of their father, neither child lived in the family home. During the illness of Dr. Bank, the record reveals that the relationship between the sons and their mother deteriorated. While there were brief contacts between the sons and their mother following their father's death the maternal relationship did not improve.
On July 1, 1969, Mrs. Bank (Weil) executed a last will and testament which recited in part that:
"I declare that I am the widow of Joseph Bank, deceased, and that I am the mother of David Alexander Bank, born on the 4th day of November, 1937, and Daniel Benjamin Bank, born on the 12th day of September, 1940, both being the issue of my marriage with the said Joseph Bank."
This will, after some minor specific bequests, devised the residue of Mrs. Bank's estate to the trustee of a previously existing trust. The beneficiaries of this trust were various charitable and philanthropic organizations. The will went on to conclude:
"In view of the fact that my sons will receive the principal of the trust created by my mother, Bertha K. Bush, upon the death of the survivor of the death of myself and my brother, Norton Bush, and will eventually receive the principal of Trust B of a trust created by my husband, Joseph Bank, and myself during his lifetime, with the Valley National Bank of Arizona as trustee, I have intentionally made no further provisions for either of my sons, David Bank or Daniel Bank, in this my Last Will and Testament. .. ."
In 1969, Mrs. Bank married Simon Weil and moved from Phoenix, Arizona to Nashville, Tennessee. On May 2, 1970, she executed a handwritten codicil to her last will and testament. This document provided in part:
"I wish to add if there is enuf (sic) another $5,000 each for David and Daniel Bank upon their reaching ages 40, respectively. They may then have learnt (sic) some of the solid virtues their parents by love and example to instil (sic).... The trusts are still operative and helpful."
On May 2, 1970, Mrs. Weil died as a result of an overdose of barbiturates. At the time of trial, Mrs. Weil's estate was valued at approximately $225,000.00 and the trusts mentioned in her will, of which her sons were beneficiaries, had an approximate value of $80,000.
As previously indicated, it was contestants' theory that Mrs. Weil lacked testamentary capacity because she did not know and understand the natural objects of her bounty. In support of this theory, the contestants called, in addition to other witnesses, *281 two psychiatrists, one of whom testified that:
"Mrs. Bank was totally unable to be aware and recognize the relationship to her own children."
And:
"Mrs. Bank at all times knew the names of her two sons. She did not know the true relationship between her as a mother and her sons as sons."
While appellant's attack on this appeal does not center on a lack of evidence to support the jury's determination, this quoted testimony serves as a springboard to discuss the legal principles involved in appellant's contention that Mrs. Weil lacked testamentary capacity and the alleged errors involving the exclusion and admission of evidence on this issue.
In discussing this issue it is important to first differentiate between testamentary capacity generally, which every testator must possess in order to validate his testamentary act and an insane delusion which may invalidate the will or a portion thereof. This distinction was early recognized in Arizona in Estate of Greene, 40 Ariz. 274, 11 P.2d 947 (1932):
"`Mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) Insanity of such broad character as to establish mental incompetency generally; or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion.'"[1] 40 Ariz. at 279,
11 P.2d at 949.
As it is important to differentiate between the two types of mental derangement which will invalidate a testamentary act, it is also important to differentiate between the two legal tests employed to determine whether such mental derangements are present in the testator's mind.
While there may be some confusion in Arizona[2] as to the true test for determining testamentary capacity, it is generally recognized that the rule is that a testator is of sound mind for testamentary purposes if the following questions can be answered in the affirmative: (1) Did the testator at the time he executed the will understand the nature of the act he was performing; (2) at this time did the testator understand the nature or character of his property; and, (3) at this time did the testator recollect his relationship to the natural objects of his bounty and to those who naturally would have some claim to his remembrance? In re Westfall's Estate, 74 Ariz. 181, 245 P.2d 951 (1952); In re Estate of Pohndorf, 11 Ariz. App. 29, 461 P.2d 508 (1969); Atkinson On Wills § 51 (2nd ed., 1953); 94 C.J.S. Wills § 15, pg. 692.
The rationale behind the requirement that the testator recollect who are "the natural objects of his bounty" appears to be founded upon the reasoning that one of the purposes of making a will is to change the prospective inheritance of heirs so that they would not take the property of the testator in the manner provided for by intestate succession; and that while prospective heirs have no present legal interest in the testator's property, the law regards their expectations as something which a competent testator will normally have in mind, for these expectations will by the very act of making a testamentary disposition, be changed. See 175 A.L.R. Testamentary Capacity 891. When viewed in this light it is obvious that the inquiry concerning this element of testamentary capacity must be focused on whether the testator has the capacity to know who these objects of his bounty are and to appreciate his relationship to them (i.e., they are my sons) and not whether in fact the testator appreciates his moral obligations *282 and duties toward such heirs in accordance with some standard fixed by society, the courts or psychiatrists. Emerich v. Arendt, 179 Ark. 186, 14 S.W.2d 547 (1929).
This focusing of inquiry on capacity for purposes of determining testamentary capacity should not be confused with an insane delusion touching the "natural objects of his bounty." This is a more narrow type of mental derangement recognized in In re Greene, supra. Such an insane delusion must be tested against its definition as "the conception of a disordered mind which imagines facts to exist of which there is no evidence and the belief in which is adhered to against all evidence and argument to the contrary, and which cannot be accounted for on any reasonable hypothesis." Estate of Cook, 63 Ariz. 78, 89, 159 P.2d 797, 802 (1945). Such an insane delusion may touch any aspect of the testator's will and many of the reported cases indicate that such an insane delusion may attach to close relatives, thus affecting the validity of the testamentary disposition as to them. But it must be kept in mind that where the alleged insane delusion touches the "natural objects of his bounty", the inquiry is not whether the testator's relationship with that bounty was morally acceptable, but whether the manner in which that bounty was treated in the testamentary document was the result of the insane delusion.
With these principles in mind, we have no hesitancy in holding that the testatrix had the capacity to know who the natural objects of her bounty were and thus had full testamentary capacity. The will and the codicil executed by the deceased state that the appellants are the sons of the deceased. Moreover, the evidence is uncontradicted, except in one regard which will be discussed next, that the deceased at all times knew exactly who appellants were and that they were her sons. This is also verified by the psychiatric testimony introduced by appellants. We further hold that the psychiatric testimony that Mrs. Weil "did not know the true relationship between her as a mother and her sons as sons" did not impugn in any manner her testamentary capacity insofar as it dealt with the legal requirement that she know the natural objects of her bounty.
Moreover, this type of testimony does not infer an insane delusion which would invalidate Mrs. Weil's testamentary acts without additional testimony that her inability to understand "the true relationship" was "adhered to against all evidence and arguments to the contrary and which cannot be accounted for under any reasonable hypothesis." In re Cook, supra. Such additional evidence is completely lacking.
Having thus disposed of these threshold issues we turn to the specific allegations of error presented by the appellants. The first of these deal with the application of the so-called Deadman Statute (A.R.S. § 12-2251) to exclude certain conversations between the appellants and the deceased. Appellants' offer of proof in this regard was that in September of 1965 while the deceased was visiting her son, David Bank in Bangkok, Thailand, she stated, "I have no son named Danny." In view of the limited scope of the offer of proof, we do not decide whether such a declaration falls within the prohibition of the Deadman Statute. Such a declaration made four years prior to the execution of the will and five years prior to the execution of the codicil wherein both sons were fully named as sons, is, in our opinion, so remote in time to the point of inquiry  the testatrix's state of mind at the time of the testamentary acts  so as to be irrelevant and therefore properly excluded by the trial court. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963).
The appellants next contend that the trial court committed reversible error in excluding from the jury's consideration that portion of a Tennessee death certificate that concluded that Mrs. Weil's death was a suicide. That portion of the death certificate indicating that Mrs. Weil's death was the result of an overdose of barbiturates was allowed to go to the jury. *283 We are not quite sure of the materiality of such alleged evidence of suicide in view of the cause of death being presented to the jury. However, in any event, we hold such conclusionary statements by the preparer of the death certificate were properly excluded.
A.R.S. § 12-2264 provides in part that:
"A ... death ... certificate is prima facie evidence of facts therein stated...." (Emphasis added.)
Moreover, Rule 44(a), 16 A.R.S., Rules of Civil Procedure, provides that:
"The records required to be made and kept by a public officer ... shall be received in evidence as prima facie evidence of the facts therein stated."
Our review of the applicable Tennessee statutes indicates that the only information pertinent here required to be included in a Tennessee death certificate is the "cause of death". Tenn.C.A. § 53-439. The "cause of death" in this case was an overdose of barbiturates which "cause of death" went to the jury. We see nothing in the Tennessee statutes which requires the maker of the death certificate to also opine as to whether that "cause of death" was self-inflicted. We find nothing in In re Estate of Wallin, 16 Ariz. App. 34, 490 P.2d 863 (1971) or California State Life Ins. Co. v. Fuqua, 40 Ariz. 148, 10 P.2d 958 (1932) which requires a different result in this case. We therefore hold that the trial court properly excluded this alleged evidence of suicide.
The appellants next complain that certain conversations which circumstantially would show the testatrix's state of mind were improperly excluded as hearsay. However, appellants have not favored this court with a citation to the transcript where such exclusions occurred, and appellants' brief concludes, "the citation[s] would be too numerous to require their enumeration here." Nor was an offer of proof made as to what these conversations contained in order for the court to ascertain their admissibility. For either of these failures, we decline to discuss this contention. 17A, A.R.S., Rules of the Supreme Court, Rule 5(b), (See, Lazear v. Pendergrass, 39 Ariz. 111, 4 P.2d 386 (1931)); 16 A.R.S. Rules of Civil Procedure, Rule 43(h), (See, Krek v. Briel, 3 Ariz. App. 126, 412 P.2d 301 (1966)).
Next appellants contend that certain medical evidence was improperly excluded. This evidence dealt first with testimony that the deceased was a habitual user of drugs and that this drug usage was continuous from 1960 until the time of her death. It is urged that this evidence was material in order to lay proper foundation for a hypothetical question to one of the psychiatric witnesses. Again we are not favored with any indication as to what this hypothetical question might be or how it might relate to the issue of whether the deceased suffered from insane delusions regarding her children. Assuming that such a hypothetical question would allow the psychiatric witness to verify his previous diagnosis that Mrs. Weil was unable to understand "the true relationship" between herself and her sons, this evidence is simply not material. This is for the reason that evidence as to the inability of Mrs. Weil to recognize her "true relationship" does not touch on testamentary capacity generally and alone does not show an insane delusion which would invalidate her will.
For the same reason, disallowing the psychiatric witness to testify as to his prognosis of Mrs. Weil's psychiatric condition which would prohibit her from having a meaningful relationship with her children was likewise not error. Again, this testimony, even if admitted, does not raise the testatrix's mental condition to the level of an insane delusion which would invalidate her will, and therefore be material to the issue under consideration. Therefore, we do not decide whether the reasons stated for excluding this type of testimony (physician-patient privilege and lack of foundation) were proper, since other reasons justify their exclusion.
*284 Appellants contend that the trial court erred in allowing lay witnesses to testify as to their opinion concerning the testatrix's capacity to know the natural objects of her bounty. In view of our determination that there was no evidence which would impugn that the testatrix had this element of testamentary capacity, we hold that if it be error to allow this testimony, such error was harmless.
The last contention raised by the appellants is that the trial court improperly instructed the jury. The first instruction complained of is:
"To be entitled to recover in this action, the contestants, David and Daniel Bank, must prove by a preponderance of the evidence that their mother, Ruth Bank Weil, did not possess testamentary capacity at the time she executed her will on July 1, 1969, or the time she executed her codicil on May 2, 1970.
"In the absence of evidence to the contrary, a presumption exists that Ruth Bank Weil at the time she executed her will and codicil possessed testamentary capacity. That presumption can be overcome only by evidence which has more convincing force and a greater probability of truth than the presumption itself and its supporting evidence."
The presumptive part of this instruction is objected to on the grounds that an equally valid presumption exists that if insanity of a confirmed or permanent nature is shown it is presumed that the condition will continue. The evidence of this alleged "permanent insanity" is that of two psychiatric witnesses who testified concerning Mrs. Weil's inability to recognize her true relationship to her children. Since we have held that this evidence does not meet the requirement of the type of "permanent insanity" necessary to invalidate a will, the instruction given correctly stated the law on the evidence presented.
The second instructive error claimed is the failure of the trial court to instruct the jury that the natural objects of Mrs. Weil's bounty were her sons, David and Daniel Bank. In view of the posture of this case, we do not believe the jury was in any manner misled by this failure and therefore decline to hold that this alleged error was reversible.
For the reasons stated herein the judgment of the trial court is affirmed.
HAIRE, P.J., and EUBANK, J., concur.
NOTES
[1] For the purpose merely of identification of terms and ease of reference, this opinion will refer to the first type of mental derangement noted in Estate of Greene, supra, as a "lack of testamentary capacity", while the second shall be referred to as an "insane delusion."
[2] See, In re O'Connor's Estate, 74 Ariz. 248, at 259, 246 P.2d 1063, at 1070 (1952).